**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 30 1999**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

PATRICK CAREY,

      Defendant-Appellant.

No. 98-3077

**ORDER ON PETITION FOR REHEARING**

Before **PORFILIO**, **MCWILLIAMS**, and **BALDOCK**, Circuit Judges.

This matter is before the court on the government's petition for rehearing by the

panel. Because the government contends we failed to properly follow *Horton v.*

*California*, 496 U.S. 128, 130 (1990), we recognize inadvertence is not a Fourth

Amendment requirement. We note, however, "inadvertence is a characteristic of most

legitimate 'plain-view' seizures." Id. As such, the fact that Detective Lewis did not

inadvertently come across the pornographic files is certainly relevant to our inquiry. Our

holding is based, however, on the fact that Detective Lewis impermissibly expanded the

scope of his search when he abandoned the search for drug-related evidence to search for evidence of child pornography. The petition for rehearing is denied.

Entered for the Court
PATRICK FISHER, Clerk of Court


by:
    Elisabeth A. Shumaker
    Chief Deputy Clerk

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 14 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

      No. 98-3077

PATRICK CAREY,

      Defendant-Appellant.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 97-CR-40057-DES)**

---

John V. Wachtel, Klenda, Mitchell, Austerman & Zuercher, L.L.C., Wichita, KS, for Defendant-Appellant.

Thomas G. Luedke, Assistant United States Attorney (Jackie N. Williams, United States Attorney, with him on the briefs), Topeka, Kansas, for Plaintiff-Appellee.

---

Before **PORFILIO**, **MCWILLIAMS**, and **BALDOCK**, Circuit Judges.

---

**PORFILIO**, Circuit Judge.

---

      Patrick J. Carey was charged with one count of possessing a computer hard drive

that contained three or more images of child pornography produced with materials

shipped in interstate commerce. *See* 18 U.S.C. § 2252A(a)(5)(B) (1996).[1] Following a conditional plea of guilty, he appeals an order of the district court denying his motion to suppress the material seized from his computer on grounds it was taken as the result of a general, warrantless search. He also contends his sentence was illegal and the district court erred in failing to depart downward from the guideline range, but we do not reach these issues. We conclude the motion to suppress should have been granted and reverse.

## I.

Mr. Carey had been under investigation for some time for possible sale and possession of cocaine. Controlled buys had been made from him at his residence, and six weeks after the last purchase, police obtained a warrant to arrest him. During the course of the arrest, officers observed in plain view a "bong," a device for smoking marijuana, and what appeared to be marijuana in defendant's apartment.

Alerted by these items, a police officer asked Mr. Carey to consent to a search of his apartment. The officer said he would get a search warrant if Mr. Carey refused permission. After considerable discussion with the officer, Mr. Carey verbally consented to the search and later signed a formal written consent at the police station. Because he

---

[1]As amended in 1998, the statute now applies to any person who knowingly possesses a computer disk "that contains *an image* of child pornography" produced with materials shipped in interstate commerce. *See* 18 U.S.C. § 2252A(a)(5)(B) (1998). Because Mr. Carey was charged on August 6, 1997, the 1996 version of the statute applies in this case.

was concerned that officers would "trash" his apartment during the search, Mr. Carey gave them instructions on how to find drug related items.

The written consent to search authorized Sergeant William Reece "to have conducted a complete search of the premises and property located at 3225 Canterbury #10, Manhattan, KS 66503." It further provided, "I do freely and voluntarily consent and agree that any property under my control . . . may be removed by the officers . . . if said property shall be essential in the proof of the commission of any crime in violation of the Laws of the United States . . . ." Armed with this consent, the officers returned to the apartment that night and discovered quantities of cocaine, marijuana, and hallucinogenic mushrooms. They also discovered and took two computers, which they believed would either be subject to forfeiture or evidence of drug dealing.

The computers were taken to the police station and a warrant was obtained by the officers allowing them to search the files on the computers for "names, telephone numbers, ledger receipts, addresses, and other documentary evidence pertaining to the sale and distribution of controlled substances." Detective Lewis and a computer technician searched the contents of the computers, first viewing the directories of both computers' hard drives. They then downloaded onto floppy disks and printed the directories. Included in the directories were numerous files with sexually suggestive titles and the label "JPG."[2] Lewis then inserted the disks into another computer and began

---

[2]Detective Lewis later testified at the time he discovered the first JPG or image
(continued...)

searching the files copied from Mr. Carey's computers. His method was to enter key words such as, "money, accounts, people, so forth" into the computer's explorer to find "text-based" files containing those words. This search produced no files "related to drugs."

Undaunted, Detective Lewis continued to explore the directories and encountered some files he "was not familiar with." Unable to view these files on the computer he was using, he downloaded them to a disk which he placed into another computer. He then was "immediately" able to view what he later described as a "JPG file." Upon opening this file, he discovered it contained child pornography.

Detective Lewis downloaded approximately two hundred forty-four JPG or image files. These files were transferred to nineteen disks, only portions of which were viewed to determine that they contained child pornography. Although none of the disks was viewed in its entirety, Detective Lewis looked at "about five to seven" files on each disk. Then, after viewing the contents of the nineteen disks in that fashion, he returned to the computers to pursue his original task of looking for evidence of drug transactions.

Mr. Carey moved to suppress the computer files containing child pornography. During the hearing on the motion, Detective Lewis stated although the discovery of the

---

[2](...continued)
file, he did not know what it was nor had he ever experienced an occasion in which the label "JPG" was used by drug dealers to disguise text files. He stated, however, image files could contain evidence pertinent to a drug investigation such as pictures of "a hydroponic growth system and how it's set up to operate."

JPG files was completely inadvertent, when he saw the first picture containing child pornography, he developed probable cause to believe the same kind of material was present on the other image files. When asked why, therefore, he did not obtain a warrant to search the remaining image files for child pornography, he stated, "that question did arise, [a]nd my captain took care of that through the county attorney's office." No warrant was obtained, but the officer nonetheless continued his search because he believed he "had to search these files as well as any other files contained [in the computer]."

Upon further questioning by the government, Detective Lewis retrenched and stated until he opened each file, he really did not know its contents. Thus, he said, he did not believe he was restricted by the search warrant from opening each JPG file. Yet, after viewing a copy of the hard disk directory, the detective admitted there was a "phalanx" of JPG files listed on the directory of the hard drive.[3] He downloaded and viewed these files knowing each of them contained pictures. He claimed, however, "I wasn't conducting a search for child pornography, that happened to be what these turned out to be."

At the close of the hearing, the district court ruled from the bench. Without any findings, the court denied the motion, saying: "[a]t this point, the Court feels that the . . . Defendant's Motion to Suppress . . . would be - should be denied. And that will be the

---

[3]We note the JPG files shown on Detective Lewis' directory printout featured sexually suggestive or obscene names, many including the word "teen" or "young." The detective testified drug dealers often obscure or disguise evidence of their drug activity.

order of the Court, realizing that they are close questions." No subsequent written order containing findings of fact or conclusions of law was filed.

## II.

We review the denial of a motion to suppress for clear error. *See United States v. Griffin*, 7 F.3d 1512, 1516 (10th Cir. 1993). Reasonableness of a search is reviewed de novo. *See United States v. Eylicio-Montoya*, 18 F.3d 845, 848 (10th Cir. 1994). Mr. Carey complains: (1) search of the computers exceeded the scope of the warrant, (2) he did not consent to the search of his apartment, and (3) seizure of the computers was unlawful because the officers lacked probable cause. We address only the first issue.

Mr. Carey argues the search of the computers transformed the warrant into a "general warrant" and resulted in a general and illegal search of the computers and their files. The Fourth Amendment requires that a search warrant describe the things to be seized with sufficient particularity to prevent a general exploratory rummaging in a person's belongings. *See Marron v. United States*, 275 U.S. 192, 196, 48 S. Ct. 74, 76 (1927) ("The requirement that warrants shall particularly describe things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is to be left to the discretion of the officer executing the warrant."). As we have instructed:

> The essential inquiry when faced with challenges under the Fourth Amendment is whether the search or seizure was reasonable – reasonableness is analyzed in light of what was reasonable at the time of the Fourth Amendment's adoption. . . . It is axiomatic that the 4th Amendment

was adopted as a directed response to the evils of the general warrants in England and the writs of assistance in the Colonies.

*O'Rourke v. City of Norman*, 875 F.2d 1465, 1472 (10th Cir. 1989) (citations omitted).

Mr. Carey argues that examined against history and case law, the search constituted general rummaging in "flagrant disregard" for the terms of the warrant and in violation of the Fourth Amendment. *United States v. Foster*, 100 F.3d 846, 849-50 (10th Cir. 1996). Despite the specificity of the search warrant, files not pertaining to the sale or distribution of controlled substances were opened and searched, and according to Mr. Carey, these files should have been suppressed. *See id.* at 849.

The government responds that the plain view doctrine authorized the police search. *See Coolidge v. New Hampshire*, 403 U.S. 443, 465 (1971). A police officer may properly seize evidence of a crime without a warrant if:

> (1) the officer was lawfully in a position from which to view the object seized in plain view; (2) the object's incriminating character was immediately apparent – ie., the officer had probable cause to believe the object was contraband or evidence of a crime; and (3) the officer had a lawful right of access to the object itself.

*United States v. Soussi*, 29 F.3d 565, 570 (10th Cir. 1994) (citing *Horton v. California*, 110 S. Ct. 2301, 2307 (1990)).

According to the government, "a computer search such as the one undertaken in this case is tantamount to looking for documents in a file cabinet, pursuant to a valid search warrant, and instead finding child pornography." Just as if officers has seized pornographic photographs from a file cabinet, seizure of the pornographic computer

images was permissible because officers had a valid warrant, the pornographic images were in plain view, and the incriminating nature was readily apparent as the photographs depicted children under the age of twelve engaged in sexual acts. The warrant authorized the officer to search any file because "any file might well have contained information relating to drug crimes and the fact that some files might have appeared to have been graphics files would not necessarily preclude them from containing such information." *See Erickson v. Commissioner of Internal Revenue*, 937 F.2d 1548, 1554 (10th Cir. 1991) (drug trafficking activity is often concealed or masked by deceptive records). Further, the government states the defendant's consent to search of the apartment overrides all of these questions because it extended to the search of every file on both computers.

The Supreme Court has instructed, "the plain view doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges." *Coolidge*, 403 U.S. at 466. The warrant obtained for the specific purpose of searching defendant's computers permitted only the search of the computer files for "names, telephone numbers, ledgers, receipts, addresses, and other documentary evidence pertaining to the sale and distribution of controlled substances." The scope of the search was thus circumscribed to evidence pertaining to drug trafficking. The government's argument the files were in plain view is unavailing because it is the contents of the files and not the files themselves which were seized. Detective Lewis

could not at first distinguish between the text files and the JPG files upon which he did an unsuccessful word search. Indeed, he had to open the first JPG file and examine its contents to determine what the file contained. Thus, until he opened the first JPG file, he stated he did not suspect he would find child pornography. At best, he says he suspected the files might contain pictures of some activity relating to drug dealing.

In his own words, however, his suspicions changed immediately upon opening the first JPG file. After viewing the contents of the first file, he then had "probable cause" to believe the remaining JPG files contained similar erotic material. Thus, because of the officer's own admission, it is plainly evident each time he opened a subsequent JPG file, he expected to find child pornography and not material related to drugs. Armed with this knowledge, he still continued to open every JPG file to confirm his expectations. Under these circumstances, we cannot say the contents of each of those files were inadvertently discovered. Moreover, Detective Lewis made clear as he opened each of the JPG files he was not looking for evidence of drug trafficking. He had temporarily abandoned that search to look for more child pornography, and only "went back" to searching for drug-related documents after conducting a five hour search of the child pornography files.

We infer from his testimony Detective Lewis knew he was expanding the scope of his search when he sought to open the JPG files. Moreover, at that point, he was in the same position as the officers had been when they first wanted to search the contents of the computers for drug related evidence. They were aware they had to obtain a search

warrant and did so. These circumstances suggest Detective Lewis knew clearly he was acting without judicial authority when he abandoned his search for evidence of drug dealing.

Although the question of what constitutes "plain view" in the context of computer files is intriguing and appears to be an issue of first impression for this court, and many others, we do not need to reach it here. Judging this case only by its own facts, we conclude the items seized were not authorized by the warrant. Further, they were in closed files and thus not in plain view.[4]

We do note the recent decision in **United States v. Turner**, 1999 WL 90209 (1st Cir. Feb. 26, 1999)[5] affirming the district court's suppression of several images of child pornography found on the defendant's computer. In **Turner**, the defendant's neighbor was the victim of a nighttime assault in her apartment, and police officers obtained the

---

[4]Given the officer's testimony that he inadvertently discovered the *first* image during his search for documents relating to drug activity, our holding is confined to the subsequent opening of numerous files the officer knew, or at least expected, would contain images of child pornography.

[5]**See also United States v. Maxwell**, 45 M.J. 406, 422 (Ct. App. Armed Forces 1996) (Where a colonel used a personal computer to transport obscenity and child pornography, the plain view doctrine did not apply to the search of computer files under a screen name not listed in the warrant. Because the warrant did not authorize search of those files, view was obtained as a result of improper governmental opening, not as a result of seeing what was legitimately in plain view.). **Cf. United States v. Abbell**, 914 F. Supp. 519, 520-21 (S.D. Fla. 1995) (In a criminal prosecution where a large volume of computer generated data was seized from the defendant's law office, a special master would determine whether documents and data were responsive to the search warrant or fell within an exception to the search warrant requirement such as the plain view doctrine.).

defendant's consent to search his apartment for signs of the intruder and for evidence of the assault itself. While searching the apartment, an officer noticed the defendant's computer screen suddenly illuminate with a photograph of a nude woman resembling the assault victim. He then sat at the computer and itemized the files most recently accessed. Several of the files had the "suffix '.jpg,' denoting a file containing a photograph." *Id.* at *2. The officer opened these files and found photographs of nude blonde women in bondage. After calling the district attorney's office for guidance, the officer copied these adult pornography files onto a floppy disk and then searched the computer hard drive for other incriminating files. He opened a folder labeled "G-Images" and "noted several files with names such as 'young' and 'young with breasts.'" *Id.* After opening one of these files and observing child pornography, the officer shut down and seized the computer, and the defendant was charged in a single count of possessing child pornography. The government contended the "consent was so broad -- authorizing search of all [the defendant's] 'personal property' that it necessarily encompassed a comprehensive search of his computer files." *Id.* But the First Circuit affirmed the suppression of the computer files on grounds "the consent did not authorize the search of the computer" because "an objectively reasonable person assessing in context the exchange between [the defendant] and these detectives would have understood that the police intended to search only in places where an intruder hastily might have disposed of any physical evidence of the … assault …." *Id.* at * 4. The court also held:

- 11 -

> We cannot accept the government's contention that the sexually suggestive image which suddenly came into "plain view" on the computer screen rendered [the defendant]'s computer files "fair game" under a consensual search simply because the [neighbor's] assault had a sexual component.… The critical consideration in this regard is that the detectives never announced, before [the defendant] gave his consent, that they were investigating a sexual assault or attempted rape.

*Id.*

As in *Turner*, the government argues here the consent Mr. Carey gave to the search of his apartment carried over to the contents of his computer files. We disagree. The arresting officer sought permission to search only the "premises and property located at 3225 Canterbury #10." Thus, the scope of the consensual search was confined to the apartment itself. The seizure of the computer was permitted by Mr. Carey's consent "that any property under my control . . . may be removed by the officers . . . if said property shall be essential in the proof of the commission of any crime . . . ." This agreement, by its own terms, did not permit the officer to open the files contained in the computer, a fact he obviously recognized because he obtained a proper warrant to search for drug related evidence before he began opening files.

The warrant constrained the officer to search for items it listed. *See United States v. Reyes*, 798 F.2d 380, 383 (10th Cir. 1986). In our judgment, the case turns upon the fact that each of the files containing pornographic material was labeled "JPG" and most featured a sexually suggestive title. Certainly after opening the first file and seeing an image of child pornography, the searching officer was aware – in advance of opening the

remaining files – what the label meant.  When he opened the subsequent files, he knew he was not going to find items related to drug activity as specified in the warrant, just like the officer in *Turner* knew he was not going to find evidence of an assault as authorized by the consent.

At oral argument the government suggested this situation is similar to an officer having a warrant to search a file cabinet containing many drawers.  Although each drawer is labeled, he had to open a drawer to find out whether the label was misleading and the drawer contained the objects of the search.  While the scenario is likely, it is not representative of the facts of this case.  This is not a case in which ambiguously labeled files were contained in the hard drive directory.  It is not a case in which the officers had to open each file drawer before discovering its contents.  Even if we employ the file cabinet theory, the testimony of Detective Lewis makes the analogy inapposite because he stated he knew, or at least had probable cause to know, each drawer was properly labeled and its contents were clearly described in the label.

Further, because this case involves images stored in a computer, the file cabinet analogy may be inadequate.  "Since electronic storage is likely to contain a greater quantity and variety of information than any previous storage method, computers make tempting targets in searches for incriminating information."  Raphael Winick, *Searches and Seizures of Computers and Computer Data*, 8 Harv. J. L. & Tech. 75, 104 (1994).  Relying on analogies to closed containers or file cabinets may lead courts to

"oversimplify a complex area of Fourth Amendment doctrines and ignore the realities of massive modern computer storage." *Id.* Alternatively, courts can acknowledge computers often contain "intermingled documents." *See United States v. Tamura*, 694 F.2d 591, 595-96 (9th Cir. 1982).[6] Under this approach, law enforcement must engage in the intermediate step of sorting various types of documents and then only search the ones specified in a warrant. Where officers come across relevant documents so intermingled with irrelevant documents that they cannot feasibly be sorted at the site, the officers may seal or hold the documents pending approval by a magistrate of the conditions and limitations on a further search through the documents. *See id.* at 596.[7] The magistrate should then require officers to specify in a warrant which type of files are sought.[8]

---

[6]*United States v. Tamura*, 694 F.2d 591, 595-96 (9th Cir. 1982), held seizure of all of a corporation's documents during a relevant time period, rather than limiting seizure to categories of documents described in a search warrant, was unreasonable despite the government's contention irrelevant documents were intermingled with described documents. Although this case did not arise in the context of a computer search, we find the concept of "intermingled documents" helpful here.

[7]The government contends Mr. Carey would have been "equally guilty had he possessed this material in the form of a book, a magazine, or a film." And in *United States v. Reyes*, 798 F.2d 380, 383 (10th Cir. 1986), we explained "in the age of modern technology and the commercial availability of various forms of items, the warrant could not be expected to describe with exactitude the precise form the records would take" because drug records might be found in cassettes, leases and accounts cards, or cancelled checks. We have stated our belief that the storage capacity of computers requires a special approach, and we do not intend to comment on the particularity requirement as it applies to all contemporary media. Rather, our discussion applies specifically to searches of files of computers held in law enforcement custody.

[8]*See* Raphael Winick, *Searches and Seizures of Computers and Computer Data*, 8

(continued...)

- 14 -

Because in Mr. Carey's case, officers had removed the computers from his control, there was no "exigent circumstance or practical reason to permit officers to rummage through all of the stored data regardless of its relevance or its relation to the information specified in the warrant." Winick, 8 Harv. J. L. & Tech. at 105.[9] With the computers and data in their custody, law enforcement officers can generally employ several methods to avoid searching files of the type not identified in the warrant: observing files types and titles listed on the directory, doing a key word search for relevant terms, or reading

---

[8](...continued)
Harv. J. L. & Tech. 75, 108 (1994) ("Computer programs store information in a wide variety of formats. For example, most financial spreadsheets store information in a completely different format than do word processing programs. Similarly, an investigator reasonably familiar with computers should be able to distinguish database programs, electronic mail files, telephone lists and stored visual or audio files from each other. Where a search warrant seeks only financial records, law enforcement officers should not be allowed to search through telephone lists or word processing files absent a showing of some reason to believe that these files contain the financial records sought. Where relying on the type of computer files fails to narrow the scope of the search sufficiently, the magistrate should review the search methods proposed by the investigating officers."); *see also Tamura*, 694 F.2d at 596 n.4. ("[w]e recently approved a procedure whereby law enforcement officers bring in lay experts as consultants to facilitate the on-site search for documents containing complex or technical subject matter") (citations omitted).

[9]*Cf. United States v. Hargus*, 128 F.3d 1358, 1363 (10th Cir. 1997) ("Although we are given pause by the wholesale seizure of file cabinets and miscellaneous papers and property not specified in the search warrant, the officers' conduct did not grossly exceed the scope of the warrant. *Their conduct was motivated by the impracticability of on-site sorting and the time constraints of executing a daytime search warrant.* The officers were authorized to seize ten broad categories of records, and those records were present in every drawer of both file cabinets. No item not specified in the warrant was admitted against [the defendant] at trial. Under these circumstances the officers did not grossly exceed the warrant in concluding they did not need to examine at the site every piece of paper in both cabinets.") (emphasis added).

portions of each file stored in the memory. *See id.* at 107. In this case, Detective Lewis and the computer technician did list files on the directory and also performed a key word search, but they did not use the information gained to limit their search to items specified in the warrant, nor did they obtain a new warrant authorizing a search for child pornography.

III.

We must conclude Detective Lewis exceeded the scope of the warrant in this case. His seizure of the evidence upon which the charge of conviction was based was a consequence of an unconstitutional general search, and the district court erred by refusing to suppress it. Having reached that conclusion, however, we are quick to note these results are predicated only upon the particular facts of this case, and a search of computer files based on different facts might produce a different result.[10]

Although other errors have been raised, we do not reach them because of our conclusion the seizure of evidence was beyond the scope of the warrant. We specifically do not reach the issue of whether Mr. Carey voluntarily consented to the search of his

[10]*Cf. United States v. Hall*, 142 F.3d 988, 993-94 (7th Cir. 1998) (Viewing images of child pornography on the defendant's computer by a repair company employee was a private search. Although a police officer then improperly copied the files to a floppy disk without a warrant, a subsequent search of the computer files by the police officer did not require suppression because the employee's statements provided an independent basis for the warrant.).

apartment.  The district court made no findings on this question, and we are not wont to opine on what would be an immaterial point in this appeal.

**REVERSED** and **REMANDED** for further proceedings in accordance with this opinion.

98-3077, <u>United States v. Carey</u>

**BALDOCK**, J., concurring.

I join in the court's opinion, but write separately to emphasize that the questions presented in this case are extremely close calls and, in my opinion, are totally fact driven.

First, absent Detective Lewis' testimony, I would not suppress the evidence. "The plain view doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges." <u>Coolidge v. New Hampshire</u>, 403 U.S. 443, 466 (1971). In light of Detective Lewis' testimony, just this sort of impermissible general rummaging occurred in this case. The detective's testimony makes clear that from the time he found the first image of child pornography, he switched from his authorized search for drug-related evidence to another subject — child pornography. At this point, the detective should have ceased his search and obtained a warrant to search the computer files for evidence of child pornography. As Detective Lewis testified, it was clear to him that after he discovered the first image, he had probable cause to believe the computer contained additional images of child pornography, and no exigent circumstances existed because the computer had been removed to the police station.

In contrast, if the record showed that Detective Lewis had merely continued his search for drug-related evidence and, in doing so, continued to come across

evidence of child pornography, I think a different result would be required. That is not what happened here, however.

Second, while agreeing with the majority that Defendant's consent to the search of his apartment did not carry over to his computer hard drive, I write separately to explain why I think the scope of Defendant's consent is limited to evidence of drug-related activity. The scope of a consensual search is "generally defined by its expressed object." Florida v. Jimeno, 500 U.S. 248, 251 (1991). To determine the breadth of the consent given by Mr. Carey, we consider what "the typical reasonable person would have understood by the exchange between the officer and the [defendant]." United States v. Elliott, 107 F.3d 810, 815 (10th Cir. 1997). Resolution of this issue requires a detailed inquiry into the facts.

The waiver signed by Defendant granted the officers permission to search the "premises and property located at 3255 Canterbury #10" and authorized the officers to remove any property "if said property shall be essential in the proof of the commission of any crime . . . ." The officer testified that after he arrested Defendant, he told him that "based on what I had just observed in his apartment that I was going to apply for a search warrant." The officer had just found, in plain view, a bong typically used for smoking marijuana and a small quantity of what appeared to be marijuana. The officer then explained to Defendant that he could consent to a search instead of the officer obtaining a warrant. Defendant told the

officer he was unsure. En route to the police station, Defendant asked several questions about the search. Upon arrival at the station, Defendant indicated that he wished to consent. He also told the officer where he would find additional drugs, a scale, a firearm and cash. In addition, Defendant told him where he would find a pornographic videotape. The officer responded that he "couldn't care less about his pornographic videotapes" and "that wasn't of concern to me."

In light of the officer's conversations with Defendant, a reasonable person would conclude that the statements by the officer limited the scope of the request to drugs and drug-related items in the apartment. See Elliott, 107 F.3d at 815; see also, United States v. Dichiarinte, 445 F.2d 126, 129 (7th Cir. 1971) (consent to search after officers repeated references to narcotics did not grant officers a license to conduct a general exploratory search). As in United States v. Turner, — F.3d —, 1999 WL 90209 (1st Cir. Feb. 26, 1999), the Defendant's consent did not include permission to search the hard drive of Defendant's computer for pornographic or any other type of files, a fact, as the majority points out, the officer recognized because he obtained a proper warrant to search for drug-related evidence before he began opening computer files. Thus, I think the record supports a finding that Defendant's consent did not extend to a search for pornographic material on the hard drive of his computer. Of course, the officer's search of the computer hard drive for "evidence pertaining to the sale and distribution of

- 3 -

controlled substances" was lawful, in that the officer obtained a valid search warrant to do so.