J-S80004-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JEFFREY DAVID NORRIS | |
| Appellant | No. 713 MDA 2016 |

Appeal from the PCRA Order April 20, 2016
In the Court of Common Pleas of Susquehanna County
Criminal Division at No(s): CP-58-CR-0000338-2009

BEFORE:  LAZARUS, J., STABILE, J., and RANSOM, J.

MEMORANDUM BY LAZARUS, J.:                **FILED FEBRUARY 28, 2017**

Jeffrey David Norris appeals from the order of the Court of Common Pleas of Susquehanna County dismissing his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A §§ 9541-9546.  After careful review, we affirm.

In 2009, Norris, a high school teacher, was under investigation for sexual offenses he allegedly committed against one of his students, A.R., in 2007.  During the course of that investigation, law enforcement officials obtained a search warrant for Norris' residence in Montrose, Susquehanna County, which identified items to be seized as follows:

> Blood, semen, vaginal secretions, genetic material, hair, couch/couch cushions, boxer type male underwear blue and white in color, couch, blue glass marijuana pipe, marijuana, telephone answering machine and tapes, electronic correspondence (e-mail), ((either printed or in digital format)), computer.

Application for Search Warrant and Authorization, 2/9/09.

Upon executing the warrant, authorities seized certain microcassette tapes that were discovered on a bookshelf near the telephone and digital answering machine. Former State Police Corporal Mark Filarsky[1] listened to portions of three of the tapes and "recognized that there was a conversation between [two] people, [and] that it appeared to be that it was unknown that a conversation was being recorded." N.T. Trial, 10/2/12, at 225. Norris was subsequently charged with three counts of interception of an oral communication pursuant to 18 Pa.C.S.A. § 5703(1).

In his "Second Supplemental Omnibus Pretrial Motion," Norris sought suppression of the tapes. Specifically, Norris argued that the search warrant authorized the seizure of "telephone answering machine and tapes." Because Norris' answering machine was digital and did not require tapes, he argued that the seizure of the tapes exceeded the scope of the search warrant.

The trial court denied Norris' motion to suppress the tapes, finding that "[t]he warrant did not specify that the tapes must fit the answering machine currently in use by [Norris]. . . . As the Commonwealth sought evidence of recorded messages, it was reasonable for the officers executing the warrant

---

[1] At the time of his testimony, Filarsky was no longer employed by the Pennsylvania State Police.

to seize the micro-cassettes as 'tapes.'"  Opinion and Order Re: Omnibus Pre-Trial Motions, 2/17/10, at 4-5.

On October 4, 2012, a jury convicted Norris of three counts of interception of oral communication.  He was acquitted of the charges related to alleged sex offenses against A.R.  On October 29, 2012, the court sentenced Norris to an aggregate of 6 to 23 months' imprisonment.  Post-sentence motions were denied, and Norris appealed.  This Court affirmed Norris' judgment of sentence by memorandum dated November 12, 2013.  ***See Commonwealth v. Norris***, 2053 MDA 2012 (Pa. Super. filed 11/12/13) (unpublished memorandum decision).  The Supreme Court denied allowance of appeal.

Through counsel, Norris filed a timely first PCRA petition on August 14, 2015.  On March 28, 2016, the PCRA issued an opinion and notice of intent to dismiss pursuant to Pa.R.Crim.P. 907.  Norris did not file a response to the court's Rule 907 notice and, by order filed April 25, 2016, his petition was dismissed.  This timely appeal follows, in which Norris raises the following issues for our review:

> 1.  Did the [PCRA] court commit an abuse of discretion and err as a matter of law by impliedly finding that there [are no] issues of material fact raised in [Norris'] [p]etition and [r]esponse to [n]otice of [i]ntent to [d]ismiss?
>
> 2.  Did the [PCRA] court commit an abuse of discretion and err as a matter of law by impliedly finding that the issues raised by [Norris] in his PCRA [p]etition lack merit and do not entitle [him] to PCRA relief?

3. Did the [PCRA c]ourt commit an abuse of discretion and err as a matter of law in finding that the police had both probable cause and a search warrant authorizing the playing of tapes that contained evidence of [Norris'] wiretap violations when the evidence was totally unrelated to the crimes that the search warrant was issued for and the evidence would not have been discoverable and/or admissible by way of the "plain view doctrine," as it was not "readily apparent" from listening to the tapes that a wiretap violation(s) had occurred?

4. Did trial counsel provide ineffective assistance of counsel in such a manner as to entitle [Norris] to relief under the [PCRA]?

Brief of Appellant, at 3-4.

Our standard and scope of review for the denial of a PCRA petition is well-settled. We review the PCRA court's findings of fact to determine whether they are supported by the record, and review its conclusions of law to determine whether they are free from legal error. *Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa. 2014). The scope of our review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level. *Id.*

We begin by noting that, although Norris lists four issues in his statement of questions involved, his appellate argument can be distilled to one claim, i.e., that trial counsel was ineffective for failing to raise and preserve the claim that the police lacked probable cause and a proper warrant to play the tapes containing evidence of his wiretap violations.[2] To

_____

[2] Although trial counsel attempted to have the tapes suppressed, he did not raise this specific argument. Accordingly, on direct appeal, this Court found this claim waived. *See Norris*, *supra* at 10-11.

- 4 -

establish counsel's ineffectiveness, a petitioner must demonstrate: (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for the course of action or inaction chosen; and (3) counsel's action or inaction prejudiced the petitioner. *Commonwealth v. Burno*, 94 A.3d 956, 964 n.5 (Pa. 2014); *Strickland v. Washington*, 466 U.S. 668 (1984).

> A failure to satisfy any prong of the ineffectiveness test requires rejection of the claim. The burden of proving ineffectiveness rests with the Appellant. To sustain a claim of ineffectiveness, Appellant must prove that the strategy employed by trial counsel was so unreasonable that no competent lawyer would have chosen that course of conduct. Trial counsel will not be deemed ineffective for failing to pursue a meritless claim.

*Commonwealth v. Rega*, 933 A.2d 997, 1019 (Pa. 2007).

As noted above, the tapes in question were seized as part of the investigation into Norris' alleged sexual abuse of A.R. Specifically, police believed, based on a consensual telephone intercept between Norris and a friend, that Norris was in possession of tapes containing telephone messages from A.R. Thus, authorities sought permission to seize, *inter alia*, a telephone answering machine and tapes from Norris' residence. Ultimately, the tapes contained no messages from A.R., but rather recordings Norris had made of conversations with various school officials regarding his employment. It was these conversations that led to Norris being charged with the three wiretap offenses at issue in this appeal. Norris argues that "the moment law enforcement realized the tapes did not contain telephone messages from [A.R.], a new search warrant was required in order to play [them]." Brief of Appellant, at 11. Norris asserts that "[c]ertainly, after

- 5 -

listening to the first of the three incriminating tapes, law enforcement was aware that the evidence contained in the micro-cassette tapes might involve a crime other than the statutory sexual assault crime they were investigating." **Id.** at 12. Thus, they were obliged to apply for a second warrant.

In support of his claim, Norris relies on **United States v. Carey**, 172 F.3d 1268 (10th Cir. 1999). There, the defendant was under investigation for the possession and sale of cocaine. After officials obtained a warrant for his arrest, the defendant agreed to a search of his apartment. Based upon that consent, officers seized two computers. Subsequently, a warrant was obtained authorizing officials to search the computers' files for "names, telephone numbers, ledger receipts, addresses, and other documentary evidence pertaining to the sale and distribution of controlled substances." **Id.** at 1270. During the course of that search, officers discovered numerous JPG files with sexually suggestive titles, which were found to contain child pornography. The defendant moved to suppress the JPG files, arguing that the search of JPG files not pertaining to the sale or distribution of controlled substances transformed the warrant into a "general warrant" and resulted in an illegal search of the computers and their files in violation of the Fourth Amendment.

In response, the government asserted that the JPG files were admissible under the "plain view" doctrine, which allows officials to properly seize evidence of a crime without a warrant if: (1) the officer was lawfully in

- 6 -

a position from which to view the object seized in plain view; (2) the object's incriminating character was immediately apparent—i.e., the officer had probable cause to believe the object was contraband or evidence of a crime; and (3) the officer had a lawful right of access to the object itself. *Id.* at 1272. The government argued that "a computer search such as the one undertaken in this case is tantamount to looking for documents in a file cabinet, pursuant to a valid search warrant, and instead finding child pornography." *Id.*

The Court rejected the plain view argument outright, on the basis that the images were contained in closed files and, thus, not in "plain view." Additionally, the Court concluded that, based upon the officer's own testimony, after viewing the contents of the first JPG file, the officer had "probable cause" to believe the remaining JPG files contained similar erotic material. Thus, each time he opened a subsequent JPG file, he expected to find child pornography and not material related to drugs. Accordingly, he had consciously expanded the scope of his search and a warrant should have been obtained.

We begin by noting that, as a decision of the U.S. Court of Appeals for the 10th Circuit, *Carey* is not binding on this Court. Moreover, it is distinguishable. In *Carey*, the officer testified that, upon viewing the first JPG file, he developed probable cause to believe the same kind of material was present on the other JPG files. Thus, it was "plainly evident each time he opened a subsequent JPG file, he expected to find child pornography and

not material related to drugs." *Id.* at 1273. Conversely, in the case at bar, Corporal Filarsky could not possibly have known what was on each tape until he listened to it in its entirety. Norris contends that, once Corporal Filarsky listened to the first tape, he had reason to believe that evidence contained in the micro-cassette tapes might involve a crime other than the sexual assault they were investigating. While this may be true, Corporal Filarsky likewise had no reason to believe that the tapes might not also contain messages from the victim. Unlike the computer in *Carey*, which contained a directory showing the name and format of each file, Corporal Filarsky had no means by which to determine the contents of the audiotapes without listening to them in full. For example, it is possible that a single audiotape may contain multiple different recordings. It is also possible that a second recording may be taped over an earlier recording and begin midway through the tape. In short, it is simply impossible to know what an audiotape contains without listening to the whole tape.

The facts in *Commonwealth v. Rega*, 933 A.2d 997 (Pa. 2007) provide a contrast to *Carey*. In *Rega*, the defendant faced charges related to the robbery of the Gateway Lodge and the murder of its security guard.

> Prior to trial, the Commonwealth uncovered evidence of possible jury tampering involving [Rega] and his mother. [Police] obtained a recorded conversation between [Rega], in jail, and his mother, Ms. Rega, in which they discussed the possibility of planting a family friend on the jury. A search warrant was executed at the home of [Rega's] mother to search for evidence of jury tampering. In executing this search warrant relating to jury tampering, police found two letters from [Rega] to his mother in which [he] asked [her] to find somebody who would

- 8 -

> give him an alibi for $500. He outlined the exact testimony he wanted from this alibi witness to demonstrate that he was not at the Gateway Lodge on December 21, 2000. In another letter he instructed his mother how she should testify. At the subsequent trial, the Commonwealth introduced testimony regarding the searches and the evidence found in Ms. Rega's home in connection with jury tampering and witness tampering.

*Id.* at 1007. Police used the two letters as the basis to obtain a second search warrant to look for papers relating to the separate crimes of witness tampering and inducing perjury.

On appeal, defendant argued that because the jury questionnaires, which the first warrant authorized the police to seize, were hundreds of pages long, the police were not justified in opening up and reading the contents of envelopes that clearly did not contain such hefty documents. The Supreme Court disagreed, stating that "the warrant properly authorized a search for papers and documents containing the names of prospective jurors. These documents could conceivably be one page documents. In fact, <u>the only way the executing officers could determine whether a particular piece of paper contained the names of prospective jurors was to look at it</u>." *Id.* at 1013–14 (emphasis added).

Similarly, in this case, the only way for Corporal Filarsky to ascertain the contents of the audiotapes, and their possible relevance to his initial investigation, was to listen to them in their entirety. As stated above, although Corporal Filarsky may have had reason to believe the tapes contained evidence of other crimes after listening to a portion of them, it was still equally possible that they contained evidence of the original crime

under investigation. As such, the original warrant was sufficient to enable authorities to listen to the audiotapes seized pursuant thereto in their entirety. Because there was no basis for suppression, Norris' ineffectiveness claim must fail, as counsel cannot be deemed ineffective for declining to pursue a meritless claim. **Strickland**, **supra**.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/28/2017