NOT DESIGNATED FOR PUBLICATION

No. 115,832

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JAMES GULIE HENNING,
*Appellant*.

MEMORANDUM OPINION

Appeal from Geary District Court; BENJAMIN J. SEXTON, judge. Opinion filed September 1, 2017. Affirmed in part, vacated in part, and remanded with directions.

*Jennifer C. Roth*, of Kansas Appellate Defender Office, for appellant.

*Michelle L. Brown*, assistant county attorney, *Jason Oxford*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BUSER, P.J., MALONE, J., and HEBERT, S.J.

HEBERT, J.: Following waiver of jury trial, the district court convicted James Gulie Henning of 10 off-grid felonies after a trial to the court. The convictions included one count of rape, three counts of aggravated criminal sodomy with a child, two counts of aggravated indecent liberties with a child and four counts of sexual exploitation of a child. Henning was sentenced pursuant to Jessica's Law to 10 life sentences, with two convictions to run consecutively and the remainder to run concurrently.

On appeal, Henning raises three issues regarding his convictions: The probable cause affidavits in support of the search warrants for his computer records and for his

1

residence were unreliable; the search warrant for his residence was overbroad; and several of his convictions were multiplicitous.

We find no reversible error regarding the probable cause affidavits or the resulting residential search warrant, but we do find several of Henning's convictions were multiplicitous and, as set forth in our opinion, we vacate several of the convictions and remand for resentencing.

Henning also raises several issues regarding his sentencing. He argues that the district court erred by weighing aggravating factors against mitigating factors in denying his motion for durational departure; the district court abused its discretion by imposing two life sentences consecutively; and the district court erred by imposing lifetime postrelease supervision and electronic monitoring.

We find the district court ruling denying departure should be vacated and the motion for departure be remanded for proceedings in accordance with K.S.A. 2016 Supp. 21-6627(d), as construed in *State v. Jolly*, 301 Kan. 313, 324-25, 342 P.3d 935 (2015). We further find the imposition of lifetime postrelease supervision and electronic monitoring exceeded the authority of the district court when imposing an off-grid life sentence and, accordingly, we vacate the district court's orders imposing such terms.

In view of our remand for resentencing and reconsideration of durational departure, we need not reach the issue regarding the imposition of consecutive sentences.

*Factual and Procedural Background*

On November 10, 2014, Detective William Arnold, Jr. of the Junction City Police Department received a tip from the Wichita Police Department. Tumblr—a website typically used to post image blogs—reported to the Wichita Police Department that an

2

account titled "dadydaughtertimes" uploaded an image suspected to be child pornography. Tumblr disabled the account and reported the IP address—*i.e.*, the internet service provider's address, or the location to which the internet sends information—and the associated email address from which the image was uploaded.

Detective Arnold confirmed the image appeared to be child pornography. He researched the IP address and determined it was located in Junction City, Geary County, Kansas and was registered to Cox Communications. By researching the email address provided by Tumblr, Arnold discovered an associated account with Google Picasa—a cloud-based photo archive website—which displayed the name "Jimmy Henning." Believing the name "Jimmy" to be a nickname for "James," Arnold searched the Junction City Police Department internal database records and identified James Henning living at a residence on 12th Street in Junction City.

Detective Arnold also searched the IP address in the Child Protective System (CPS) database. He found the IP address was associated with a Globally Unique Identifier (GUID)—an internet-capable machine, such as a computer—for a period of time including October 11, 2014, which was the date of the last login to the Tumblr account. Therefore, he concluded that the IP address and GUID were connected on the same date as the last login of the Tumblr account that uploaded the child pornography image. Arnold identified two images of suspected child pornography associated with the GUID and IP address together. In addition, CPS records indicated the GUID had been in possession of 1,612 images of known or suspected child pornography and was associated with several other network or proxy IP addresses, which could indicate an attempt to hide online activity.

Detective Arnold drafted a probable cause affidavit, upon which the district court issued a search warrant to Cox Communications seeking account information—name, address, date of birth, and social security number—for the account assigned to the IP

address on October 11, 2014. Cox Communication's response revealed the account in question was registered to Mary Henning, who resided at the same address Arnold had previously identified as James Henning's residence. Arnold added the information received from Cox Communications to his probable cause affidavit in support of a search warrant for his residence on 12th Street, which was issued by the district court.

During execution of the residential warrant, Detective Arnold questioned Henning at his residence and arrested him for dissemination of child pornography. At the county jail, Henning told Detective Arnold he was addicted to pornography and informed Detective Arnold where on Henning's computer child pornography would be found. Detective Arnold searched the laptop Henning identified and found not only child pornography, but also four homemade videos and additional still photographs of Henning engaging in sexual acts, including sexual intercourse and anal sodomy, with Henning's eight-year-old daughter, K.H.

The State charged Henning with 11 off-grid felonies stemming from the 4 videos and the still photographs of sexual acts with K.H. Henning filed motions to suppress the evidence obtained from both the Cox Communications and the residential search warrants and his statements to the police. The district court denied those motions after a hearing.

Henning waived his right to a jury trial. His case was tried to the district court, which convicted him of 10 off-grid felonies. At sentencing, Henning sought a durational departure. The district court heard argument at sentencing but denied the motion. The district court sentenced Henning to 10 life sentences with 2 convictions to run consecutively and the remainder concurrently to those convictions. Henning timely appealed.

*The Probable Cause Affidavits*

Henning contends that the district court erred in denying his motion to suppress evidence because the probable cause affidavits provided by Detective Arnold in support of the search warrants for Cox Communications and the Henning residence contained material omissions. The two affidavits contained identical information as it is relevant to this issue; the residential affidavit had the same content as the Cox Communications affidavit but added the information obtained from the Cox Communication warrant. Since our consideration applies to both affidavits without distinction, we will refer to them jointly in the singular.

When reviewing a motion to suppress evidence, this court applies a bifurcated standard. We must determine whether the factual findings underlying the district court's decision are supported by substantial competent evidence and review the ultimate legal conclusion drawn from the factual findings de novo. *State v. Reiss*, 299 Kan. 291, 296, 326 P.3d 367 (2014). When an affidavit supporting an application for a search warrant is challenged, we apply a deferential standard, asking "'whether the affidavit provided a substantial basis for the magistrate's determination that there is a fair probability that evidence will be found in the place to be searched.'" *State v. Adams*, 294 Kan. 171, 180, 273 P.3d 718 (2012) (quoting *State v. Hicks*, 282 Kan. 599, Syl. ¶ 2, 147 P.3d 1076 [2006]). Because we have the same access to the content of the affidavit as the issuing magistrate, we may perform our own determination of the sufficiency of the affidavit under this deferential standard. *Adams*, 294 Kan. at 180.

An affidavit in support of a search warrant is presumed valid. See *Franks v. Delaware*, 438 U.S. 154, 171, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). For that reason, the facts contained in an affidavit generally may not be disputed by the party against whom the warrant is directed. *Adams*, 294 Kan. at 178-79. However, a limited exception exists when the subject alleges that the affidavit contains either deliberate falsehoods,

untrue statements demonstrating a reckless disregard for the truth, or deliberate omissions of material fact. *Franks*, 438 U.S. at 171-72. The district court must hold an evidentiary hearing—called a *Franks* hearing—if the defendant shows by a sworn allegation that an affidavit in support of a search warrant is unreliable. 438 U.S. at 171-72.

When a defendant alleges that an affidavit in support of a search warrant omits information, the court must determine if the omission was material and, if so, whether the omission rendered the application and affidavit unreliable. *State v. Schoonover*, 281 Kan. 453, 513, 133 P.3d 48 (2006). A warrant containing omissions is valid if the affidavit, even with the omitted material added to it, sufficiently establishes probable cause. 281 Kan. at 513.

In his motion, Henning claimed the affidavit was misleading in that it included the fact the GUID at issue was associated with 1,612 images of known or suspected child pornography but omitted that only two of those images were in association with the IP address connected with the Henning residence. He also argued that the affidavit failed to state that the 1,612 child pornography images were downloaded to the GUID prior to its association with the IP address connected to the Henning residence. Following a first *Franks* hearing on August 11, 2015, District Judge Hornbaker denied the motion but subsequently recused himself from the case and vacated his order. District Judge Sexton took over the case and held a second hearing on Henning's motion to suppress on September 9, 2015.

After reviewing the transcript of the first *Franks* hearing and listening to argument from counsel, Judge Sexton found that the alleged omissions were not misleading or material because the warrants would have been issued even if the alleged omitted material had been included. Specifically, the court relied on the fact that there was probable cause to establish that on October 11, 2014, the IP address associated with the Henning residence was accessed to upload images of known child pornography. Thus,

6

even if the affidavit had included only information about the two images uploaded from the IP address and not the 1,612 additional images located on the GUID, the court held there was still probable cause to establish felonious conduct at the residence. The district court held Detective Arnold did not deliberately mislead the court into believing that there was evidence of child pornography that was accessed on the IP address associated with Henning's residence. Our review, therefore, focuses on whether there is substantial competent evidence to support the district court's findings.

The probable cause affidavit provides substantial competent evidence to support the district court's findings of fact. It traces Detective Arnold's investigation from the initial tip he received from the Wichita Police Department that Tumblr reported an account which uploaded an image suspected to be child pornography. Tumblr provided an IP address associated with the account. Detective Arnold therefore believed he had probable cause that the IP address was used to upload child pornography on October 11, 2014. Detective Arnold used the CPS database to identify a GUID associated with the IP address beginning October 11, 2014, which was the same date as the last login of the Tumblr account. The search warrant response Detective Arnold received from Cox Communications confirmed that the IP address was associated with the Henning residential address.

The district court did not err in concluding that even if the alleged omitted material was added to the probable cause affidavit the affidavit sufficiently established probable cause of a crime. See *Schoonover*, 281 Kan. at 513. Even if the affidavit had included the fact that only two images were associated with both the GUID and the IP address, the affidavit provided a substantial basis for the magistrate's determination there was a fair probability that evidence of child pornography would be found in the Henning residence. See *Adams*, 294 Kan. at 180.

On appeal, Henning raises several additional alleged omissions. He argues the affidavit stated the GUID and IP address had been associated "since" October 11, 2014, but claims the evidence actually indicated the association was only proven through October 28, 2014, not the time that the affidavits were written on November 14 and November 25, 2014. Henning also claims the affidavit omitted detailed explanations about what network or proxy IP addresses are and should have included information about Detective Arnold's training and education. Since these issues were not specifically raised or pressed below, the district court never made factual findings or rendered a decision on these grounds.

As a general rule, issues not raised in the district court cannot be raised for the first time on appeal. While there are several exceptions to this rule, Supreme Court Rule 6.02(a)(5) (2017 Kan. S. Ct. R. 34) requires an appellant to specifically explain why an issue not raised below should be considered for the first time on appeal. Since Henning did not present us with a reason why we should consider the additional alleged omissions, they are not properly preserved for review. See *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015); *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014).

In any event, we would find these additional alleged omissions are neither material nor misleading. The affidavit contained sufficient information to allow the magistrate to conclude the IP address and GUID were associated on the date that the Tumblr account uploaded the image of child pornography—October 11, 2014. Thus, even if the affidavit specified the IP address and GUID were not associated after October 28, 2014, it would not alter the court's finding. Similarly, additional information about network or proxy IP addresses (which were described in the affidavit as suggesting the user attempted to hide online activity) or information about Detective Arnold's training and education would not make it less likely that evidence of child pornography would be found at the Henning residence. See *Schoonover,* 281 Kan. at 513.

In summary, we conclude under the facts presented, even with the addition of all the alleged omitted material, Detective Arnold's probable cause affidavit was sufficient to provide a substantial basis for the issuing magistrate to determine there was a fair probability officers would find evidence of the crime of dissemination of child pornography. The *Franks* motion was properly denied.

*The Residential Search Warrant*

Henning next argues that the search warrant for his residence was deficient because it did not describe the items to be searched with particularity, in violation of his rights under the Fourth Amendment to the United States Constitution. This court uses a bifurcated standard to review the district court's decision on a motion to suppress. Factual findings are reviewed for substantial competent evidence and legal conclusions are reviewed de novo. *Reiss*, 299 Kan. at 296.

The Fourth Amendment states: "[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The scope of §15 of the Kansas Constitution Bill of Rights is the same. See K.S.A. 2016 Supp. 22-2502. The Fourth Amendment requires that a search warrant describe the things to be seized with sufficient particularity to prevent a general exploratory rummaging in a person's belongings—commonly referred to as the "particularity requirement." See *Crowther v. State*, 45 Kan. App. 2d 559, 566, 249 P.3d 1214 (2011) (citing *United States v. Carey*, 172 F.3d 1268, 1272 [10th Cir. 1999]). The purpose of the requirement is to prevent general searches and seizure of items at the discretion of the officer executing the warrant. *State v. LeFort*, 248 Kan. 332, 340, 806 P.2d 986 (1991).

"[W]arrants and their supporting affidavits are interpreted in a common sense, rather than a hypertechnical, fashion. To do otherwise would discourage police officers

9

from submitting their evidence to a judicial officer before acting." *LeFort*, 248 Kan. at 335-36; see K.S.A. 22-2511 ("No search warrant shall be quashed or evidence suppressed because of technical irregularities not affecting the substantial rights of the accused.").

The warrant in this case begins with an introductory paragraph stating:  "Having evidence under oath before me from which I find there is probable cause to believe that an offense against the laws of the State of Kansas has been committed (Distribution of Child Pornography)." The warrant then lists in 20 paragraphs the items Detective Arnold sought to search under the warrant. At trial and on appeal, Henning specifically challenges the following paragraphs as overbroad:

"2. Computers.

"3. To forensically process and search in a controlled setting all electronic media for the purpose of viewing and or retrieving for evidentiary purposes all data including electronic images, documents and stored electronic communications.

. . . .

"9. Digital communications devices allowing access to the Internet or to cellular digital networks to include cellular telephones, email devices and personal digital assistants.

"10. Digital input and output devices to include but not limited to keyboards, mice, scanners, printers, monitors, network communication devices, modems and external or connected devices used for accessing computer storage media.

. . . .

"13. Contents of volatile memory related to computers and other digital communication devices that would tend to show the current and recent use of the computer, use of encryption, use of other communications devices, routes of Internet and other digital communications traffic and passwords, encryption keys or other dynamic details necessary to preserve the true state of running evidence.

"14. Computer software, hardware or digital contents related to the sharing of Internet access over wired or wireless networks allowing multiple persons to appear on the Internet from the same IP address."

10

Searching computers presents unique issues under the Fourth Amendment. Law enforcement "'cannot simply conduct a sweeping, comprehensive search of a computer's hard drive.'" *State v. Rupnick*, 280 Kan. 720, 732, 125 P.3d 541 (2005) (quoting *United States v. Walser*, 275 F.3d 981, 986 [10th Cir. 2001], *cert. denied* 535 U.S. 1069 [2002]). Warrants for computer searches must affirmatively limit the search to evidence of specific types of material. *United States v. Riccardi*, 405 F.3d 852, 862 (10th Cir. 2005); *State v. Walser*, 275 F.3d 981, 986 (10th Cir. 2001); *United States v. Campos*, 221 F.3d 1143, 1147-48 (10th Cir. 2000). "Officers must be clear as to what it is they are seeking on the computer and conduct the search in a way that avoids searching files of types not identified in the warrant." *Crowther*, 45 Kan. App. 2d at 566.

Henning cites *United States v. Otero*, 563 F.3d 1127 (10th Cir. 2009) to support his claim that the challenged paragraphs are overbroad. In *Otero*, the search warrant at issue was divided into two sections: first "ITEMS TO BE SEIZED," and second "COMPUTER ITEMS TO BE SEIZED." 563 F.3d at 1129-30. The first section "limit[ed] the search to evidence of specific crimes" of which Otero was suspected, namely mail and credit card theft. In contrast, the second section had no such limitation but rather appeared to allow seizure of "[a]ny and all" information contained in Otero's computer. 563 F.3d at 1132-33. The Tenth Circuit held that the second section of the warrant was invalid because it authorized a "wide-ranging search" of Otero's computer. 563 F.3d at 1133.

The State contends that this case is more like *United States v. Brooks*, 427 F.3d 1246 (10th Cir. 2005). The search warrant at issue in that case authorized officers to search for "'evidence of child pornography,'" including "'photographs, pictures, computer generated pictures or images, depicting partially nude or nude images of prepubescent males and or females engaged in sex acts'" as well as "'correspondence, including printed or handwritten letters, electronic text files, emails and instant messages.'" 427 F.3d at 1252. The court held that "although the language of the warrant may, on first glance,

authorize a broad, unchanneled search through Brooks's document files, as a whole, its language more naturally instructs officers to search those files only for evidence *related to child pornography*." 427 F.3d at 1252. The court held while the warrant "could have been more artfully written" in context, the limitation on the image files implicitly authorized officers to search through computer files only for items specifically related to child pornography. 427 F.3d at 1253.

Here, Henning correctly points out that the challenged paragraphs of the search warrant do not explicitly limit the search to the specific crimes or evidence sought. However, like in *Brooks*, the warrant as a whole indicates the search should be limited to the crime of distribution of child pornography. Before listing the items to be seized, the warrant states that Detective Arnold, "[h]aving evidence under oath before me from which I find there is probable cause to believe that offense against the State of Kansas has been committed (Distribution of Child Pornography)" seeks "certain items," which he identifies in a single list containing some 20 numbered paragraphs—suggesting that the entire list is subject to the purpose of finding evidence of the crime at issue. Several paragraphs specify the evidence must relate to child pornography. Paragraph 1 specifically refers to "images or visual depictions representing exploitation of children." Paragraph 3, one of the challenged sections, refers to "evidentiary purposes" which would necessarily relate back to the introductory probable cause statement referring to the crime of distribution of child pornography. Paragraphs 6, 7, and 19 specifically refer to "child pornography" and in paragraphs 17 and 18, the reference to "exploitation" is specific. Henning does not challenge paragraphs 4, 5, 8, 11, or 12, even though they do not make specific references to "child pornography" or "exploitation of children."

The officer executing the warrant would not read the challenged paragraphs in isolation but rather in the context of the entire document. Like in *Brooks*, the warrant here could have been more artfully drawn, but a common-sense reading of the language of the

12

warrant as a whole makes clear that it is limited to evidence related to the crime of distribution of child pornography. See *LeFort*, 248 Kan. at 334-35.

At the very least, under the circumstances of this case, the good faith exception to the exclusionary rule announced in *United States v. Leon*, 468 U.S. 897, 918-20, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984), would salvage the evidence obtained pursuant to the search of Henning's residence, since the officer herein acted in good faith and in reasonable reliance on the warrant in executing a search within the scope of the warrant. See *United States v. Nolan*, 199 F.3d 1180, 1184 (10th Cir. 1999).

Whether the good faith exception applies is a question of law subject to de novo review. *United States v. Leary*, 846 F.2d 592, 606 (10th Cir. 1988). To determine whether the good faith exception applies, the court's "inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922 n.23. The court should review the text of the warrant and the circumstances of the search to ascertain whether the agents might have reasonably presumed it to be valid. *Leary*, 846 F.2d at 607.

In *Otero*, the case relied on by Henning, the court considered the circumstances surrounding the issuance and execution of the warrant and determined that the good faith exception applied. It noted the officer had attempted to craft a warrant that would authorize a search for evidence of the crimes at issue. The officer sought the assistance of an Assistant United States Attorney, who had assured the officer the language satisfied legal requirements, and the officer received approval from the magistrate. The court also noted that the search was in fact limited to evidence of the crime. 563 F.3d at 1134.

Similarly in *Riccardi*, the Tenth Circuit affirmed application of the good faith exception where:

13

"The district court noted the following factors in support of applying the *Leon* exception: (1) the affidavit limited the search to child pornography; (2) the officers executing the warrant were involved in the investigation throughout, and one of the executing officers actually wrote the affidavit to support the application; (3) Agent Finch stopped to ask if the warrant was sufficient and received assurances from Detective Dickey; (4) the search methodology was limited to finding child pornography; and (5) investigators seized only evidence relevant to the crimes identified in the affidavit." 405 F.3d at 864.

Detective Arnold submitted the probable cause affidavit for approval to the County Attorney's office for advice on its legality and was provided assurance of its completeness before submitting it to the magistrate. Detective Arnold was the officer who prepared the affidavits, obtained the warrant, and led the search to collect evidence. He was the only officer who searched the computers. Detective Arnold testified at length to the district court that he searched only for evidence of child pornography and disregarded any file on the hard drive that was irrelevant to the distribution of child pornography. He also testified that he couldn't identify the GUID containing the relevant child pornography files until he performed a forensic search of the machines. His search was clearly limited to evidence pertaining to child pornography.

Detective Arnold had reason to believe the warrant was valid, considered himself authorized to search only for evidence of crimes for which he had probable cause, and conducted his search accordingly. The district court did not err in denying Henning's motion to suppress.

*Multiplicitous Convictions*

Henning was convicted on two counts of aggravated indecent liberties with a child (Counts 1 and 4); two counts of aggravated criminal sodomy with a child (Counts 2 and

14

3); and four counts of sexual exploitation of a child (Counts 5, 6, 7, and 8). These convictions are based on the video recordings found on Henning's computer. Henning argues that these convictions are multiplicitous in violation of the constitutional prohibitions against double jeopardy, contending he was convicted multiple times for one continuous course of conduct. He requests we vacate his convictions for one count of aggravated indecent liberties, one count of aggravated criminal sodomy, and three counts of sexual exploitation of a child. Henning was also convicted of one count of rape (Count 9) and one additional count of aggravated criminal sodomy (Count 11). These convictions were based on separate visual images and are not included in Henning's multiplicity challenge.

The issue of multiplicity is a question of law over which we exercise unlimited review. *State v. Sprung,* 294 Kan. 300, 306, 277 P.3d 1100 (2012). Multiplicity is the charging of a single offense in several counts of a complaint. Multiplicity offends the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights when the improper splitting of a single offense into multiple counts results in multiple punishments following conviction of those counts. See *Schoonover*, 281 Kan. at 475.

> "[T]he overarching inquiry is whether the convictions are for the same offense. There are two components to this inquiry, both of which must be met for there to be a double jeopardy violation: (1) Do the convictions arise from the same conduct? and (2) By statutory definition are there two offenses or only one?" 281 Kan. at 496.

The first component of the multiplicity inquiry requires we determine whether the conduct is discrete or unitary. If the conduct is discrete, the convictions do not arise from the same offense and there is no double jeopardy violation. If the charges arose from the same act or transaction, then the conduct is unitary and we must move to the second component of the inquiry. *Sprung*, 294 Kan. at 307.

15

To determine whether convictions arose from unitary conduct, *Schoonover* identified the following factors:

> "(1) whether the acts occur at or near the same time; (2) whether the acts occur at the same location; (3) whether there is a causal relationship between the acts, in particular whether there was an intervening event; and (4) whether there is a fresh impulse motivating some of the conduct." 281 Kan. at 497.

Henning contends the conduct depicted in the four videos was a single unitary course of conduct, and application of the first two *Schoonover* factors would tend to support this contention. The time stamp on the videos would suggest that all of the sexual activity depicted occurred within eight minutes of each other. The events all occurred in the same location—a room over the detached garage at the Henning residence. There is no evidence anyone left or came into the room during the course of the activities.

However, the State focuses its argument on the last two *Schoonover* factors, contending that the act of starting and stopping of the video camera constituted an intervening event and indicates a separate fresh impulse motivated each of the four videos.

Kansas courts have held that acts are discrete when they are separated by some break that provides the defendant with an opportunity to reconsider his or her crime. See *State v. Sellers,* 292 Kan. 346, 359-60, 253 P.3d 20 (2011), *overruled on other grounds in State v. Dunn,* 304 Kan. 773, 375 P.3d 332 (2016); *State v. Colston*, 290 Kan. 952, 964, 235 P.3d 1234 (2010), *overruled on other grounds in State v. Dunn,* 304 Kan. 773, 375 P.3d 332 (2016).

In *Sellers,* the Supreme Court upheld the defendant's conviction of two counts of aggravated indecent liberties with a child, where Sellers had touched the victim, then left

16

the room for 30-90 seconds to check on a barking dog, returned to the room, and touched the victim a second time. The Court reasoned that leaving the room broke the chain of causality and gave Sellers an opportunity to reconsider his felonious course of action. 292 Kan. at 360.

In *Colston,* the Supreme Court found that multiple acts had occurred where the evidence indicated that the defendant had completed an act of penile penetration and that a subsequent digital penetration was motivated by a fresh impulse when the victim asked to leave the room to urinate. The ruling in *Colston* was, however, made in considering whether a unanimity instruction was required, rather than in the context of a multiplicitous conviction challenge.

When we consider the nature of the sexual conduct which occurred within a relatively short period of approximately eight minutes in a singular location, we are not convinced that the act of stopping and restarting the video camera constituted a purposeful intervening break in the causality between the various sexual activities depicted on each short video. There does not appear to be any new or fresh impulse motivating additional activity, but rather the actions constitute a continuous, unitary course of conduct involving the sexual exploitation of the child victim. Thus, we find that the four convictions for sexual exploitation of a child under Counts 5, 6, 7, and 8 are multiplicitous.

Having determined that all of the sexual activity depicted on the four videos arose out of the same unitary course of conduct, we then turn to the statutory definitions to determine the allowable unit of prosecution for aggravated indecent liberties with a child and aggravated criminal sodomy. See *Sprung,* 294 Kan. at 307-08.

In *Sprung,* it was noted that in *Schoonover* the court had determined that in considering the unit of prosecution test, the key is the nature of the conduct proscribed,

17

not the number of acts or the number of victims. 294 Kan. at 310. In applying that test to indecent liberties with a child under K.S.A. 21-3504(a)(3)(A)—the identical predecessor to K.S.A. 2016 Supp. 21-5506(b)(3)(A), the recodified statute under which Henning was charged and convicted—the court determined that the legislature had intended to create a single unit of prosecution where convictions arose out of multiple acts during a unitary course of conduct. 294 Kan. at 310. The *Sprung* analysis and rationale clearly precludes Henning's multiple convictions for aggravated indecent liberties with a child under Counts 1 and 4. The same rationale and analysis would also apply to a consideration of the conduct proscribed by K.S.A. 2016 Supp. 21-5504(b)(1) to preclude Henning's multiple convictions for aggravated criminal sodomy with a child under Counts 2 and 3.

Accordingly, we vacate one conviction of aggravated indecent liberties with a child, one conviction of aggravated criminal sodomy with a child, and three convictions of sexual exploitation of a child, and remand the remaining three convictions for resentencing. In so doing, we are mindful that each of the three crimes constitutes an off-grid felony subject to a potential life sentence. See K.S.A. 2016 Supp. 21-5504(c)(3); K.S.A. 2016 Supp. 21-5506(c)(3); K.S.A. 2016 Supp. 21-5510(b)(2).

*Durational Departure*

Prior to sentencing, Henning moved for a durational departure, seeking a sentence of 155 months in prison. The district court held a hearing and denied the motion. Henning argues on appeal that the district court erred in denying his departure motion for two reasons. First, he argues the court improperly weighed aggravating and mitigating factors in violation of K.S.A. 2016 Supp. 21-6627(d) and *State v. Jolly*, 301 Kan. 313, 324-25, 342 P.3d 935 (2015). Alternatively, he claims the district court should have granted the motion based on substantial and compelling mitigating factors.

This court reviews the district court's denial of a motion for departure for an abuse of discretion. *Jolly*, 301 Kan. at 324-25. A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) the action is based on an error of law; or (3) the action is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

Under Jessica's Law, the presumptive sentence for a defendant who is 18 years or older and convicted of rape, aggravated criminal sodomy of a child, sexual exploitation of a child, or aggravated indecent liberties with a child is life in prison with no possibility of parole for 25 years. K.S.A. 2016 Supp. 21-6627(a)(1)(B), (C), (D), (F). The district court must impose the presumptive sentence "unless the judge finds substantial and compelling reasons, following a review of mitigating circumstances, to impose a departure." K.S.A. 2016 Supp. 21-6627(d)(1).

K.S.A. 2016 Supp. 21-6627(d) refers to "mitigating circumstances" but not aggravating circumstances—factors that increase the severity of the crime. In *Jolly*, our Supreme Court determined that K.S.A. 2016 Supp. 21-6627(d)(1) "makes no provision for the weighing of aggravating circumstances against the mitigating circumstances to determine if a departure should be imposed." 301 Kan. at 321. Accordingly, the court disapproved of any language in prior caselaw "that would indicate aggravating circumstances can be weighed against mitigating circumstances when considering a departure in a Jessica's Law sentencing." 301 Kan. at 322.

The *Jolly* court further stated: "While [the statute] does not allow a weighing of aggravating factors against mitigating factors, the facts of the case—including any egregious ones—are essential for a judge to consider in deciding if a departure is warranted based on substantial and compelling reasons." 301 Kan. at 323-24. The court recognized that "a judge does not sentence in a vacuum" and specifically stated the "sentencing judge is to consider information that reasonably might bear on the proper

19

sentence for a particular defendant, given the crime committed, including the manner or way in which an offender carried out the crime. This includes those 'circumstances inherent in the crime and the prescribed sentence.'" 301 Kan. at 324. The court concluded by stating:

> "[T]he proper statutory method when considering a departure from a Jessica's Law sentence is for the sentencing court first to review the mitigating circumstances without any attempt to weigh them against any aggravating circumstances. Then, in considering the facts of the case, the court determines whether the mitigating circumstances rise to the level of substantial and compelling reasons to depart from the otherwise mandatory sentence. Finally, if substantial and compelling reasons are found for a departure to a sentence within the appropriate sentencing gridlines, the district court must state on the record those substantial and compelling reasons." *Jolly*, 301 Kan. at 324.

In his motion for durational departure and at sentencing, Henning's attorney argued that several mitigating factors justified granting a shorter sentence. Henning cited the following factors: his lack of criminal history; his established military and law enforcement career experience; his education; his cooperation with law enforcement during the investigation; his diagnosis indicating he suffers from PTSD and recommendation that he be given treatment opportunities for his sexual addiction issues; his current time served; and his remorse for his actions. In response, the State acknowledged that Henning was employed by the United States Army in a military police capacity and he had no scoreable prior criminal history. However, the State argued that letters Henning wrote to his sister while incarcerated indicate that he lacked remorse for his actions. Further, the State pointed to the psychological evaluation, which determined Henning was a pedophile, blamed his daughter for sexually pursuing him, and suffered from denial, a mixed personality disorder, narcissism, paranoia, and antisocial features.

The district court heard argument at the sentencing hearing and ruled on Henning's departure motion as follows:

"I see and have gone through each of these defendant's exhibits. And I see the service you have to our country. When I take that, and I put that [*sic*] the scale of the lady with the blindfold holding it, and I put over here the incident you did—the incident with your daughter, the—what you've done to her.

"And we talk about throwing lives away, and . . . we talked about your—these other—these other lives, here, that your actions have affected. In your letters that's set forth in State's Exhibit 1, indicates that you don't have a clue as to what damage you've caused. You say you're sorry, here today, but letters written almost—right after yo—your trial date would indicate other—now, it's true, you could have had a—an epiphany, and hope that's true. But the exhibits would indicate otherwise.

"When I take those—all those exhibits from the [A]rmy and all your service to our country, and I put that on one scale. And I put on the other scale that videotape, that this Court reviewed, it dropped like a rock. There is no mitigating circumstances here. There's only aggravating circumstances here.

"A parent has a duty to be the gatekeeper to harm getting to their children. And you violated that in every way possible. You violated the fiduciary duty you have to your child. You violated you[r] child in every conceivable way.

"And when we talk about lives, in order for this Court to consider this mitigating, I find that absurd, sir. I understand your attorney's doing his job, but there is in no way, shape, or form any mitigation in this matter whatsoever, and the Court denies the motion for the durational departure."

Henning argues that the district court explicitly weighed aggravating and mitigating circumstances in violation of K.S.A. 2016 Supp. 21-6627(d) and *Jolly*. At the hearing, neither the district court nor the parties referred to *Jolly*. However, another panel of this court recently stated that "our job on appeal is to measure the district court's ruling against the standard set out in *Jolly*." *State v. Sullivan*, No. 114,369, 2016 WL 4413563, at *2 (Kan. App. 2016) (unpublished opinion).

Unfortunately, the district court here failed to first address each of the mitigating circumstances claimed by Henning, as appears to be required by the *Jolly* procedure, making reference only to Henning's military service. Further, by explicitly making a

literary reference to the "scale of the lady with the blindfold holding it," the district court ran afoul of the mandate to avoid weighing mitigating circumstances against aggravating factors. The district court specifically considered the video tape, the State's primary piece of evidence, to be an "aggravating" circumstance causing the scale to have "dropped like a rock."

The district court's descriptions could reasonably be construed as consideration of information that "might bear on the proper sentence for a particular defendant, given the crime committed, including the manner or way in which an offender carried out the crime." *Jolly,* 301 Kan. at 324. But in *State v. McCormick,* 305 Kan. 43, 46, 48-51, 378 P.3d 543 (2016), a four-justice majority of our Supreme Court vacated a sentence where the trial judge explicitly referred to a key piece of the State's evidence—the extreme intoxication of the 13-year-old victim—as an aggravating factor which "trumped" any mitigation in denying a departure motion in a Jessica's Law case.

Justice Stegall, joined in dissent by Justices Luckert and Rosen, argued that the Supreme Court had elevated form over substance and vacated a valid sentence because the district court judge "simply used the 'wrong' words to describe what he did" by considering both the mitigating factors and the circumstances of the crime. *McCormick,* 305 Kan. at 53.

However, despite this articulate dissent and despite Judge Malone's well-reasoned dissent in *State v. Powell*, 53 Kan. App. 2d 758, 763-771, 393 P.3d 174 (2017), in which he pointed out the confusion created by the conflicting directives of *Jolly* we are duty bound to follow the Supreme Court precedent established in *Jolly,* and reiterated in *McCormick. State v. Meyer,* 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015).

By failing to strictly adhere to the procedure set out in *Jolly* and by using the apparently verboten words "weighing" and "aggravating circumstances," the district court

22

abused its discretion by basing its denial of dispositional departure on a legal error. Accordingly, the order denying Henning's motion for dispositional departure is vacated and the case is remanded with directions to conduct a new motion hearing in compliance with K.S.A. 2016 Supp. 21-6627 as interpreted in *Jolly* and *McCormick.* This hearing will be held in conjunction with the resentencing of the multiplicitous convictions vacated and remanded previously ordered in this opinion.

It would seem compatible with *Jolly* that at such motion hearing the State should be allowed to present rebuttal to any evidence in mitigation presented by the defendant, although the State is precluded from offering independent evidence in aggravation. The district court and all the parties must, however, scrupulously avoid use of the terms "aggravating" or "weighing" in describing the decision making process.

Because of this remand, we do not consider Henning's alternative argument that the district court should have granted his motion for departure based on substantial and compelling factors which he presented. Henning may reraise this consideration in the district court.

*Consecutive Sentences*

Henning also argues that in the alternative, if this court does not remand for resentencing on his motion for departure, then remand is necessary because the district court erred in running two counts consecutively. As a general rule, the district court has discretion to order concurrent or consecutive sentences in off-grid cases. K.S.A. 2016 Supp. 21-6606(a); K.S.A. 2016 Supp. 21-6819(b). However, since we have remanded this case for resentencing and reconsideration on other grounds set forth above in this opinion, we need not address Henning's issue of whether the district court abused its discretion by imposing consecutive sentences. Henning may reraise this consideration in the district court.

23

*Lifetime Postrelease and Electronic Monitoring*

Henning argues that the district court made two sentencing errors regarding his postrelease term: (1) the court improperly ordered lifetime postrelease supervision; and (2) the court improperly ordered electronic monitoring. He contends that his sentence is therefore illegal and may be corrected at any time under K.S.A. 22-3504(1). Whether a sentence is illegal is a question of law over which this court has unlimited review. *State v. Trotter*, 296 Kan. 898, 902, 295 P.3d 1039 (2013).

The district court ordered lifetime postrelease supervision and electronic monitoring for all 10 counts for which he was convicted. The State concedes the court erred on both points. "An inmate who has received an off-grid indeterminate life sentence can leave prison only if the successor to the Kansas Parole Board grants the inmate parole. Therefore, a sentencing court has no authority to order a term of postrelease supervision in conjunction with an off-grid indeterminate life sentence." *State v. Cash*, 293 Kan. 326, Syl. ¶ 2, 263 P.3d 786 (2011).

Under K.S.A. 2016 Supp. 22-3717(u), when the prisoner review board orders parole of an inmate, it "shall order as a condition of parole that the inmate be electronically monitored for the duration of the inmate's natural life." It is well established that although electronic monitoring is mandated as a condition of parole under K.S.A. 2016 Supp. 22-3717(u), "the sentencing court does not have the authority to impose parole conditions." *State v. Mason*, 294 Kan. 675, 677, 279 P.3d 707 (2012); see *State v. Beaman*, 295 Kan. 853, 869, 286 P.3d 876 (2012) (sentencing court does not have authority to impose electronic monitoring).

The district court erred in ordering lifetime postrelease supervision and electronic monitoring, and the judgments imposing such terms are vacated. Since this case has been

24

remanded for resentencing, the district court should take note of this limitation on its authority when reconsidering the sentences to be imposed.

Affirmed in part, vacated in part, and remanded with directions.

* * *

MALONE, J., concurring:  I agree with the result of the well-reasoned majority opinion on all issues. I write separately only as to James Gulie Henning's claim that the district court erred in denying his motion for a durational departure by failing to comply with the holding in *State v. Jolly*, 301 Kan. 313, 324-25, 342 P.3d 935 (2015). It appears that the district court in Henning's case made the same mistake the district court made in *State v. McCormick*, 305 Kan. 43, 50-51, 378 P.3d 543 (2016), by referring to the State's evidence in opposition to the departure motion as "aggravating factors" and by expressly "weighing the aggravating evidence against the mitigating evidence" presented by Henning. Thus, we must reverse with directions for the district court to comply with the holding in *Jolly*. However, I restate my belief that the analysis in *Jolly* is confusing and flawed for all the reasons more fully stated in my dissenting opinion in *State v. Powell*, 53 Kan. App. 2d 758, 763-771, 393 P.3d 174 (2017). Our Supreme Court must take the first opportunity it has to further clarify how sentencing courts should conduct hearings on departure motions under Jessica's Law.